IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| VALERI JEAN C.,[1]<br><br>        Plaintiff,<br><br>vs.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>        Defendant. | Case No. 3:22-cv-00090 RRB<br><br>**ORDER REMANDING FOR FURTHER PROCEEDINGS**<br>**(Docket 16)** |

## I.   INTRODUCTION

Claimant, Valeri Jean C., filed an application for Social Security Disability Insurance benefits ("SSDI") and Supplemental Security Income benefits ("SSI") on August 11, 2016, alleging disability beginning June 1, 2012.[2] Claimant exhausted her administrative remedies and seeks relief from this Court. She argues that the determination by the Social Security Administration ("SSA") that she is not disabled, within the meaning of the Social Security Act ("the Act"),[3] is not supported by substantial evidence and that

---

[1] Plaintiff's name is partially redacted pursuant to Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), *available at* https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.
[2] Tr. 120.
[3] 42 U.S.C. § 423; 42 U.S.C. § 1381.

the Administrative Law Judge ("ALJ") committed legal errors. Claimant seeks a reversal of the decision by the SSA and a remand for further proceedings.

The Commissioner of the SSA ("Commissioner") filed an answer to the complaint and an answering brief in opposition, to which Claimant has replied. For the reasons set forth below, Claimant's Motion for Remand at **Docket 16** is **GRANTED,** the Commissioner's final decision is **VACATED,** and the case is **REMANDED** to the SSA for further proceedings.

## II. STANDARD OF REVIEW

Disability is defined in the Act as:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[4]

The Act provides for the payment of disability benefits to individuals who have contributed to the social security program and who suffer from a physical or mental disability.[5] Specifically:

> An individual shall be determined to be under a disability only if his . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy"

---

[4] 42 U.S.C. § 423(d)(1)(A).
[5] 42 U.S.C. § 423(a).

*Valerie C. v. Kijakazi* Case No. 3-22-cv-00090-RRB
Order Remanding for Further Proceedings Page 2
Case 3:22-cv-00090-RRB   Document 19   Filed 08/18/23   Page 2 of 15

means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[6]

The Commissioner has established a five-step process for determining disability within the meaning of the Act,[7] relevant portions of which are addressed below. A claimant bears the burden of proof at steps one through four in order to make a prima facie showing of disability[8] If a claimant establishes a prima facie case, the burden of proof then shifts to the agency at step five.[9]

### III. DISCUSSION

#### A. Background

The parties are familiar with the medical evidence, discussed herein as appropriate. Claimant alleges that she is disabled due to fibromyalgia, neuropathy, multiple sclerosis, and stroke.[10] Her date last insured is September 30, 2015.[11] The first ALJ, Paul Hebda, issued an unfavorable decision on January 16, 2019.[12] The Appeals Council remanded the matter on April 2, 2020, finding that the ALJ did not make a proper finding regarding whether Plaintiff's past relevant work rose to the level of substantial

---

[6] 42 U.S.C. § 423(d)(2)(A).
[7] 20 C.F.R. § 404.1520(a)(4).
[8] *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).
[9] *Treichler*, 775 F.3d at 1096 n.1.
[10] Tr. 120.
[11] *Id*.
[12] Tr. 159–66.

*Valerie C. v. Kijakazi*  Case No. 3-22-cv-00090-RRB
Order Remanding for Further Proceedings  Page 3
Case 3:22-cv-00090-RRB   Document 19   Filed 08/18/23   Page 3 of 15

gainful activity, and that Claimant had not properly been advised of her right to representation.[13]

The second ALJ hearing was held on January 7, 2021.[14] ALJ Cecilia LaCara took testimony from Claimant, as well as non-examining medical expert Steven Goldstein, and vocational expert K. Diane Kramer.[15] ALJ LaCara issued an unfavorable decision on April 13, 2021.[16] In reaching her conclusions, the ALJ relied significantly on a treating PA from January 2013, who opined that Claimant could work full-time without restrictions; non-examining neurological medical expert Dr. Goldstein, who opined at the 2021 hearing that Claimant could perform light work, including standing/walking 6 hours in an 8-hour day; and a 2017 opinion by Dr. Feigin, a state agency psychological consultant, who opined that Claimant could carry out simple, unskilled work activity provided limited interaction with the public or changes in the workplace.[17]

Applying the 5-step process, the ALJ concluded that: **Step 1**, Claimant had not engaged in substantial gainful activity since June 1, 2012, her alleged onset date; **Step 2**, Claimant suffered from severe impairments, including multiple sclerosis, obesity, degenerative disc disease of the spine, degenerative joint disease of the bilateral knees, and anxiety disorder; and **Step 3**, Claimant's severe impairments did not meet any medical listings.[18] At **Step 4**, the ALJ found that Claimant could not perform her past relevant work

---

[13] Tr. 172–75.
[14] Tr. 40.
[15] Tr. 11, 28.
[16] Tr. 13–39.
[17] Tr. 27–30.
[18] Tr. 19–22.

*Valerie C. v. Kijakazi*  Case No. 3-22-cv-00090-RRB
Order Remanding for Further Proceedings  Page 4
Case 3:22-cv-00090-RRB   Document 19   Filed 08/18/23   Page 4 of 15

as a cook.[19]  At **Step 5** the burden of proof shifts to the Commissioner.[20]  The ALJ concluded that Claimant was able to perform work in the national economy, such as housekeeper/cleaner, small parts assembler, and collator-operator.[21]

Claimant alleges numerous errors after Step 3 in the analysis.

**B.     Issues on Appeal**

**1.     Rejection of Claimant's testimony**

Claimant argues that the ALJ failed to provide clear and convincing rationale for rejecting her testimony.[22]  Claimant also argues that the ALJ's "boilerplate" language finding that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms" were not entirely consistent with the medical evidence failed to provide "specific, clear, and convincing reasons" for rejecting Claimant's testimony.[23]

Defendant argues that Claimant's allegations that she required the use of a cane, that she suffered from constant pain and fatigue, and that she had debilitating anxiety were unsupported by record, citing roughly 100 pages of the 3,000 page record wherein providers noted "normal gait," "intact motor strength," "no acute distress," "normal behavior, mood, affect, memory and cognitive function," and a lack of "any signs of anxiety or agitation." [24]  The Commissioner reasons that "the ALJ reasonably considered these unremarkable findings when concluding that [Claimant's] allegations of debilitating

---

[19] Tr. 30.
[20] *Treichler*, 775 F.3d at 1096 n.1.
[21] Tr. 31.
[22] Docket 16.
[23] Docket 16 at 15, citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 488 (9th Cir. 2015).
[24] Docket 17 at 8–9.

*Valerie C. v. Kijakazi*                                                                                     Case No. 3-22-cv-00090-RRB
Order Remanding for Further Proceedings                                                                                  Page 5
Case 3:22-cv-00090-RRB   Document 19   Filed 08/18/23   Page 5 of 15

physical and mental limitations were unreliable."[25] Moreover, the Commissioner argues, Claimant had conservative treatment for her back and knee problems, and her mental health treatment was "minimal."[26] Defendant argues that "the ALJ reasonably concluded that this treatment history further undermined Plaintiff's allegations of debilitating symptoms and limitations."[27] The ALJ also found that Claimant's pain improved with medication, and "impairments that can be controlled effectively with medication are not disabling."[28]

        The Court has reviewed the 100 pages referenced by Defendant. Over a third of the pages cited were from the Kenai MediCenter where Claimant was receiving pain management for "chronic back pain and bilateral knee pain,"[29] which tends to support rather than detract from Claimant's allegations of back and knee pain. In other instances, the reason for the visit was unrelated to the general findings made. For example, a "normal gait" and "oriented to time and place" were noted when Claimant visited the emergency room for a kidney stone in 2013.[30]

        The ALJ's finding that Claimant's ability to raise her child by herself disputes her claimed level of impairment is particularly troublesome. The ALJ concluded that:

> [T]he record indicates that, despite her conditions, she has been
> caring for her daughter . . . who has special needs, as a single

---

[25] *Id*. at 9, citing Tr. 24–26.
[26] *Id*. at 9.
[27] *Id*. citing Tr. 25–26.
[28] Docket 17 at 10, citing *Warre ex rel. E.T. IV v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).
[29] Tr. 1167, 1179, 1183, 1190, 1194, 1269, 1291, 1307, 1320, 1329, 1741, 1750, 1754, 1759, 1763, 1771, 1776, 1779, 1783, 1788, 1792, 1796, 2111, 2121, 2130, 2140, 2144, 2147, 2151, 2155, 2159, 2168, 2391, 2410, 2810, 2815, 2821, 2830.
[30] Tr. 533, 541, 794.

> parent. As a parent she has to meet the persistent needs of her child, including feeding, bathing, and clothing them. In addition to attending to her child on a regular schedule, she must respond to unscheduled matters such as temper tantrums, illness, etc. She must also consistently monitor her daughter to ensure that she is safe.[31]

According to this reasoning, no parent would ever be able to prove disability. But "[t]he Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, . . . and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."[32] Because the Court remands this matter for other reasons, the ALJ will have an opportunity to re-evaluate Claimant's credibility.

    **2.    Residual Functional Capacity ("RFC")**

    Between Steps 3 and 4 of the five-step analysis, a claimant's RFC is assessed. The RFC is the most someone can do despite their mental and physical limitations.[33] In determining a claimant's RFC, the ALJ must base findings on "all of the relevant medical and other evidence," including a claimant's testimony regarding the limitations imposed by her impairments.[34] This RFC assessment is used at both Steps Four and Five.[35]

---

[31] Tr. 27.
[32] *Fair v. Bowen*, 885 F.2d at 603.
[33] *Berry v. Astrue*, 622 F.3d 1228, 1233 (9th Cir. 2010); 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).
[34] 20 C.F.R. § 404.1545(a)(3).
[35] 20 C.F.R. §§ 404.1520(a)(4).

In evaluating Claimant's RFC, the ALJ concluded that Claimant had the capacity to perform a limited range of light work,[36] concluding that she cannot climb ladders, ropes, or scaffolds; should avoid all exposure to extreme heat, unprotected heights, and hazardous machinery; can perform work that is simple and routine; can have occasional interaction with the general public; and can adapt to occasional changes in a work setting.[37] Claimant argues that the ALJ's RFC failed to account for her mental health and postural limitations.

### a. Mental health limitations

At the end of the hearing, Claimant's representative noted that medical records reflected that Claimant's mental impairments were "obviously severe," and requested a "consultative exam or a psychiatric medical doctor to review this case."[38] The only assessment of Claimant's mental impairments in the record was by Dr. Jacqueline Bock, a neuropsychologist, dated almost four years earlier on May 24, 2017.[39] Dr. Bock diagnosed generalized anxiety disorder, and indicated that Claimant's mental health status interfered with her daily functioning "necessitating outpatient mental health counseling and

---

[36] Categories of work include sedentary, light, medium, heavy, and very heavy. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567.
[37] Tr. 22.
[38] Tr. 76.
[39] Tr. 2190.

*Valerie C. v. Kijakazi*     Case No. 3-22-cv-00090-RRB
Order Remanding for Further Proceedings     Page 8
Case 3:22-cv-00090-RRB   Document 19   Filed 08/18/23   Page 8 of 15

psychopharmacological management."[40] She recommended medication "such as Zoloft," and a therapist trained to work with anxiety reduction.[41] The ALJ denied Claimant's request for a new evaluation, but then gave Dr. Bock's opinion only "partial weight."[42]

At Step 3, the ALJ acknowledged that Claimant had an anxiety disorder, and considered the Paragraph B criteria of the related Listings. Paragraph B criteria are used to determine if the severity of a claimant's mental impairment meets or is medically equal to the criteria of a listed impairment.

> [These criteria] represent the areas of mental functioning a person uses in a work setting. They are: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself . . . To satisfy the paragraph B criteria, your mental disorder must result in "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning.[43]

Although the ALJ acknowledged at Step 3 that Claimant had an anxiety disorder, the ALJ found that "her anxiety complaints are not fully consistent with her minimal mental health treatment, benign mental presentation during appointments, and her activities, which include caring for a special needs daughter as a single parent."[44] The ALJ found only "moderate limitations" in the Paragraph B criteria, which does not rise to the level of

---

[40] Tr. 2195.
[41] Tr. 2196.
[42] Tr. 29.
[43] Listing 12.00A2b https://www.ssa.gov/disability/professionals/bluebook/12.00-Mental Disorders-Adult.htm.
[44] Tr. 29.

"marked" or "extreme" required to satisfy a listed impairment. Accordingly, the ALJ moved on from Step 3 to the calculation of the RFC and Steps 4 and 5.

As the Ninth Circuit explained in the oft-cited 2012 decision in *Hutton v. Astrue*, an ALJ should not disregard the ALJ's *own* findings when determining the RFC.[45] Despite acknowledging Claimant's anxiety disorder, the ALJ did not include, and did not explain her failure to include, her findings of "moderate limitations" with respect to Claimant's ability to concentrate, persist, or maintain pace in the RFC.[46] Here, even though Claimant's "moderate limitations" were not severe enough to satisfy the Paragraph B criteria at Step 3, such limitations still should have been included in the subsequent RFC discussion. The ALJ's failure to do so without explanation was error.

  b. **Postural Limitations**

Claimant also argues that although the ALJ determined that her degenerative joint disease of the bilateral knees was severe,[47] the ALJ then included no specific postural limitations in the RFC with respect to degenerative joint disease of the bilateral knees.[48] As with Claimant's anxiety, the ALJ acknowledged the degenerative joint disease as a severe impairment that "significantly limits [her] ability to perform basic work activities," and acknowledged the severe impairment when *discussing* the RFC, but then failed to

---

[45] 491 F. App'x 850–51 (9th Cir. 2012), *citing* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe[.]'").

[46] Docket 16 at 10. Claimant argues that "a limitation to simple and routine work is not adequate to address [Claimant's] limitations in the concentrate, persist or maintain pace category." Docket 16 at 10 (citing *Lubin v. Comm'r of Soc. Sec.*, 507 F. App'x 709, 712 (9th Cir. 2013)).

[47] Tr. 19.

[48] Docket 16 at 11, citing Tr. 19, 22.

*Valerie C. v. Kijakazi*  Case No. 3-22-cv-00090-RRB
Order Remanding for Further Proceedings  Page 10
Case 3:22-cv-00090-RRB  Document 19  Filed 08/18/23  Page 10 of 15

include any specific limitations in the RFC itself, other than excluding climbing ladders, ropes, or scaffolds, and avoiding extreme heat, unprotected heights, and hazardous machinery.[49] Claimant suggests that other postural limitations, such as prohibiting bending, squatting, kneeling, crouching, and crawling, should have been included.[50]

Even the state agency medical consultant, Dr. Douglas Smith, opined that Claimant should have postural limitations regarding ramps, stairs, balancing, kneeling, crouching, or crawling, in light of her knee pain, mild edema, crepitus, and knee brace and cane.[51] Claimant argues that this recommendation is supported throughout the medical records.[52] Accordingly, she argues that the ALJ's failure to provide an explanation as to why postural limitations were not included is reversible error.[53]

In response, Defendant notes that the ALJ acknowledged the recommendations of various assessments that included postural limitations, concluding that Claimant "would still not be disabled because the jobs she identified at step five 'do not require any climbing, balancing and crawling' and do not require 'more than occasional stooping, kneeling, and crouching.'"[54] Defendant notes that two of the jobs the ALJ identified "do not require any postural activities at all."[55] Indeed, the Ninth Circuit found harmless error in *Stubbs-Danielson v. Astrue,* where "the ALJ's RFC finding erroneously

---

[49] Docket 16 at 11 citing Tr. 18, 22, 25.
[50] *Id*. at 12.
[51] Tr. 128–29.
[52] Docket 16 at 12–14, citing Tr. 556, 510, 506, 694, 777, 780, 656, 590, 569, 2403, 2518, 2524, 2809, 2864. Claimant argues that as of July 2015, she was advised to use a cane in the morning until her medications took effect. Tr. 128.
[53] Docket 16 at 14.
[54] Docket 17 at 5, citing Tr. 28.
[55] *Id*.

*Valerie C. v. Kijakazi* Case No. 3-22-cv-00090-RRB
Order Remanding for Further Proceedings Page 11
Case 3:22-cv-00090-RRB   Document 19   Filed 08/18/23   Page 11 of 15

omitted [claimant's] postural limitations . . . since *sedentary* jobs require infrequent stooping, balancing, crouching, or climbing."[56]  Although Defendant argues that *Stubbs-Danielson* is "directly applicable here," the ALJ in this case found that Claimant was capable of performing work as a collator operator, housekeeper, and small parts assembler—all of which are *light* work, not sedentary, according to the Dictionary of Occupational Titles.  Claimant argues that because the ALJ included no limitations in her RFC regarding bending, squatting, kneeling, crouching, or crawling, that the ALJ's findings were deficient.[57]

The Court notes that one of the positions the ALJ found Claimant capable of performing, "Cleaner, Housekeeping," DOT 323.687-014, specifically requires "any combination of following duties" including making beds, moving furniture, hanging drapes, and rolling carpets.[58]  Although this Court cannot make vocational findings, it is common sense that this job description would include some bending, squatting, kneeling, crouching, or crawling.  The ALJ's omission of additional postural limitations was not harmless, as discussed below.

### 3. Hypotheticals presented by ALJ to vocational expert

Claimant argues that the ALJ's failure to account for her mental health and postural limitations resulted in presentation of incomplete hypotheticals to the vocational

---

[56] *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (emphasis added).
[57] Docket 18 at 3.
[58] https://occupationalinfo.org/32/323687014.html (last visited August 16, 2023).

expert. The ALJ presented three hypotheticals of increasing degrees of limitation.[59] The vocational expert was able to find jobs in the national economy for all three hypotheticals.

But Claimant is correct that the ALJ's RFC was flawed for failure to include all of her mental and physical limitations, as discussed in this Order. "An ALJ must propose a hypothetical that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations."[60] It is axiomatic that a flawed hypothetical may result in flawed vocational expert testimony. "[H]ypotheticals posed to a vocational expert . . . must only include those limitations supported by substantial evidence. . . . Conversely, an ALJ is not free to disregard properly supported limitations. . . ."[61] Such a failure cannot be deemed harmless when a proper hypothetical would have included limitations which may have altered the vocational expert's recommendation.[62] Accordingly, as in *Osenbrock*, the ALJ's step five determination is unsupported by substantial evidence.

**C.    Instructions on Remand**

A decision by the Commissioner to deny disability benefits will not be overturned unless it either is not supported by substantial evidence or is based upon legal

---

[59] The first included light work, with no climbing of ladders, ropes, or scaffolds, or exposure to non-weather-related extreme heat. The second added avoiding all exposure to unprotected heights and hazardous machinery, as well as limiting work to "simple, routine, and repetitive," tasks with only occasional interaction with the general public or changes in the work setting. The third hypothetical added a stand/walk limitation of 4 hours per day including a sit/stand option, with no balancing and only occasional stooping, kneeling, crouching, or crawling, and some additional environmental limitations such as avoiding vibrations and fumes. Tr. 69–71.
[60] *Osenbrock v. Apfel,* 240 F.3d 1157, 1163 (9th Cir.2001).
[61] *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006).
[62] *Id*.

*Valerie C. v. Kijakazi*            Case No. 3-22-cv-00090-RRB
Order Remanding for Further Proceedings        Page 13
Case 3:22-cv-00090-RRB   Document 19   Filed 08/18/23   Page 13 of 15

error.⁶³  "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."⁶⁴  Such evidence must be "more than a mere scintilla," but also "less than a preponderance."⁶⁵  In making its determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.⁶⁶  If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.⁶⁷  Courts "review only the reasons provided by the ALJ and may not affirm the ALJ on a ground upon which he did not rely."⁶⁸  If an ALJ commits legal error, courts will uphold the decision if it is harmless.⁶⁹  An error is harmless if it is "inconsequential to the ultimate nondisability determination."⁷⁰  Having carefully reviewed the administrative record, including extensive medical records, the Court concludes, based upon the record as a whole, that the ALJ's decision denying disability benefits to Claimant was not supported by substantial evidence for the reasons discussed in this Order.

---

⁶³ *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).
⁶⁴ *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).
⁶⁵ *Perales*, 402 U.S. at 401; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).
⁶⁶ *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).
⁶⁷ *Gallant v. Heckler*, 753 F.2d 1450, 1452–53 (9th Cir. 1984).
⁶⁸ *Garrison*, 759 F.3d 995, 1010 (9th Cir. 2014).
⁶⁹ *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).
⁷⁰ *Id.* (citation omitted).

*Valerie C. v. Kijakazi*  Case No. 3-22-cv-00090-RRB
Order Remanding for Further Proceedings  Page 14
Case 3:22-cv-00090-RRB   Document 19   Filed 08/18/23   Page 14 of 15

## V. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Claimant's motion at **Docket 16** is **GRANTED** and this matter is **REMANDED** for further proceedings.

IT IS SO ORDERED this 18th day of August, 2023, at Anchorage, Alaska.

                                              */s/ Ralph R. Beistline*
                                              RALPH R. BEISTLINE
                                          Senior United States District Judge

*Valerie C. v. Kijakazi*  Case No. 3-22-cv-00090-RRB
Order Remanding for Further Proceedings  Page 15
Case 3:22-cv-00090-RRB   Document 19   Filed 08/18/23   Page 15 of 15